IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

BETINA KENDALL, :
:
    Plaintiff, :
:
vs. : CIVIL ACTION 10-0701-M
:
MICHAEL J. ASTRUE, :
Commissioner of Social Security,:
:
    Defendant. :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff seeks judicial review of an adverse social security ruling which denied a claim for Supplemental Security Income (hereinafter *SSI*) (Docs. 1, 13). The parties filed written consent and this action has been referred to the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 18). Oral argument was waived in this action (Doc. 19). Upon consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and

Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-six years old, had completed an eighth-grade education (Tr. 34), and had previous work experience as a cleaner/ housekeeper and cashier/checker (Tr. 41). In claiming benefits, Plaintiff alleges disability due to degenerative disc disease and major depressive disorder (Doc. 13 Fact Sheet).

The Plaintiff protectively filed an application for SSI on August 20, 2008 (Tr. 100-06; *see* Tr. 15). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that Kendall was capable of returning to her past relevant work as a cleaner/housekeeper (Tr. 15-23). Plaintiff requested review of the hearing decision (Tr. 10) by the Appeals Council, but it was denied (Tr. 1-4).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence. Specifically, Kendall alleges that: (1) The ALJ improperly determined that her mental impairments were not severe; and (2) the ALJ's determination of her residual functional capacity (hereinafter *RFC*) is not supported by the evidence (Doc. 13). Defendant has responded to—and denies—these claims (Doc. 14). The medical evidence of record follows.

Medical notes from Dr. Stanley Barnes, from July 2, 2002 through January 13, 2004, show that he treated her for various routine medical ailments (Tr. 161-74). Included among the complaints were anxiety, low back pain, arthralgias and myalgias, lumbosacral strain, osteoarthritis, and depression for which he prescribed Lortab,[1] Xanax,[2] Valium,[3] and Wellbutrin.[4] Further records from the Barnes Family Medical Associates show complaints of chronic pain syndrome and depression for which she

---

[1]*Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).
[2]*Xanax* is a class four narcotic used for the management of anxiety disorders. *Physician's Desk Reference* 2294 (52nd ed. 1998).
[3]*Diazepam*, better known as Valium, is a class IV narcotic which is used for treatment of anxiety. *Physician's Desk Reference* 2765-66 (62nd ed. 2008).
[4]*Wellbutrin* is used for treatment of depression. *Physician's Desk Reference* 1120-21 (52nd ed. 1998).

3

received a prescription for Paxil[5] (Tr. 176-91).

On October 8, 2006, Plaintiff underwent radiographic testing with the following results: a normal CT of the brain, normal chest x-ray, and negative results for the cervical spine (Tr. 192-93).

Records show that Kendall first became a patient at Southwest Alabama Mental Health on December 12, 2006 while going through a divorce; Plaintiff voiced suicidal thoughts, but said that she had not done anything because of her children (Tr. 206; *see generally* Tr. 194-206). Notes from the days that follow reveal more suicidal ideation (Tr. 201-05). On December 18, Kendall was diagnosed to suffer from recurrent, severe major depressive disorder; her Celexa[6] prescription was increased (Tr. 199). On January 16, 2007, Plaintiff reported that the medications had helped her through the holidays, though she still had episodes of wanting to scratch herself or pull her hair; the Celexa was continued, but Zyprexa[7] was also prescribed (Tr. 198). On February 5, Kendall reported that she was feeling a lot better though she still had anxiety attacks and felt like

---

[5] *Paxil* is used to treat depression. *Physician's Desk Reference* 2851-56 (52nd ed. 1998).

[6] *Celexa* is used in treating depression. *Physician's Desk Reference* 1161-66 (62nd ed. 2008).

[7] *Zyprexa* is used for the "management of the manifestations of psychotic disorders." *Physician's Desk Reference* 1512 (52nd ed. 1998).

life has dealt her a bad hand; Klonopin was added to her medical regimen[8] (Tr. 196).

On February 16, 2007, an MRI, with and without contrast, of Plaintiff's brain was performed; results were negative other than sinusitis (Tr. 208). An MRI was also done of the lumbar spine which revealed disc dehydration/degeneration at L1-2, with mild degenerative bony spurring and mild disc bulging with mild impingement on the anterior thecal sac (Tr. 209). Another MRI of the lumbar spine, performed a month later, revealed the same findings though it referred to the disc degeneration at L1-2 as severe and the impingement as mild-to-moderate; there was also mention of Schmorl's nodes at L1-2, which had not been previously mentioned (Tr. 211). An MRI of the cervical spine, performed on June 4 revealed a congenital defect which was not thought to be significantly degenerative (Tr. 212).

Dr. Vijay C. Vyas first saw Kendall on March 2, 2006 for complaints of lumbar spasm for which he prescribed Naprosyn[9] and Lortab; Vyas continued treating her through November 9, 2009 (Tr. 226-27; *see generally* Tr. 213-40, 274-89, 293-97).

---

[8]*Klonopin* is a class four narcotic used for the treatment of panic disorder. *Physician's Desk Reference* 2732-33 (62nd ed. 2008).
[9]*Naprosyn*, or *Naproxyn*, "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used, *inter alia*, for the relief of mild to moderate pain. *Physician's Desk Reference* 2458 (52nd ed. 1998).

Radiographic examination on March 13, 2006 revealed slight scoliosis and mild osteoarthritic changes in the lumbar spine with mild changes in the sacroiliac joints as well as a finding of degenerative disc disease at L1-2; there was also the possibility of osteopenia or osteoporosis in all examined bones (Tr. 231). Medical notes during Vyas's treatment show that Plaintiff received treatment for backaches, colds, fever, migraines, sinusitis, nausea, and several falls for which Vyas prescribed Lortab, Paxil, Zoloft,[10] Ativan,[11] Inderal,[12] Xanax, Phenergan,[13] Toradol,[14] and Robaxin.[15] A brain CT scan on June 26, 2008 was negative (Tr. 237). A note from January 28, 2009 stated that the disability office called and said that Kendall had told them that she was considering suicide; Plaintiff was encouraged to go to the emergency room to seek treatment, but

---

[10] *Zoloft* is "indicated for the treatment of depression." *Physician's Desk Reference* 2229-34 (52nd ed. 1998).
[11] "*Ativan* (lorazepam) is indicated for the management of anxiety disorders or for the short-term relief of the symptoms of anxiety or anxiety associated with depressive symptoms." Its use is not recommended "in patients with a primary depressive disorder or psychosis." *Physician's Desk Reference* 2516-17 (48th ed. 1994).
[12] *Inderal* "is indicated for the prophylaxis of common migraine headache." *Physician's Desk Reference* 3046-47 (52nd ed. 1998).
[13] *Phenergan* is used as a light sedative. *Physician's Desk Reference* 3100-01 (52nd ed. 1998).
[14] *Toradol* is prescribed for short term (five days or less) "management of moderately severe acute pain that requires analgesia at the opioid level." *Physician's Desk Reference* 2507-10 (52nd ed. 1998).
[15] *Robaxin* "is indicated as an adjunct to rest, physical therapy, and other measures for the relief of discomforts associated with acute, painful musculoskeletal conditions." *Physician's Desk*

follow-up phone calls revealed that she did not go (Tr. 278). On her next visit, three weeks later, Vyas encouraged Plaintiff to seek out mental health treatment (Tr. 278).

On November 4, 2008, Kendall was examined by Psychologist Robert A. DeFrancisco who found her dysphoric, oriented in five spheres with intact immediate, recent, and remote memory (Tr. 241-44). There was no confusion, loose association, tangential, or circumstantial thinking; insight was fair while general judgment skills were normal. The Psychologist's impression was that Plaintiff suffered from Major Depressive Disorder and Pain Disorder. DeFrancisco noted that Kendall had no motivation, but did not appear to be malingering; he suggested extensive psychotherapy and pharmacotherapy and expressed the opinion that, with appropriate intervention, her prognosis was good.

On January 28, 2009, Plaintiff was seen by Dr. Stephen M. West who performed a physical examination (Tr. 263-65). Kendall had full grip strength bilaterally; full flexion and extension of both wrists and elbows; full flexion, extension, abduction, and adduction of both shoulders; full plantar flexion and dorsiflexion bilaterally; full flexion and adduction of both knees; and full flexion, extension, abduction, and adduction of

---

*Reference* 2428 (52nd ed. 1998).

hips bilaterally.  Plaintiff could bend over to ankle level, do a full squat, and walk with a normal gait; she had full range of motion in all joints with no contractures or abnormalities.  The doctor's assessment was chronic neck and back pain with no deformities or deficit; hypertension; chronic pain syndrome with narcotic use; GERD; and major depression; he found no major abnormalities.  This concludes the medical evidence.

Kendall first claims that the ALJ improperly determined that her mental impairments were not severe.  Plaintiff testified that she suffers depression, that she does not like to be around people, and that she spends a majority of her time in the bedroom (Tr. (Tr. 39).  She also testified that she takes anti-depressive medication, but that she could not say that it helps (Tr. 40).

In *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984), the Eleventh Circuit Court of Appeals held that "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *Flynn v. Heckler*, 768 F.2d 1273 (11th Cir. 1985); *cf*. 20

8

C.F.R. § 404.1521(a) (2010).[16]  The Court of Appeals has gone on to say that "[t]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).  It is also noted that, under SSR 96-3p, "evidence about the functionally limiting effects of an individual's impairment(s) must be evaluated in order to assess the effect of the impairment(s) on the individual's ability to do basic work activities."

In her decision of April 13, 2010, the ALJ determined that Kendall's depression was not a severe impairment as she had not seen a therapist since February 2007 and was only getting medications from her treating physician (Tr. 17).  The ALJ further noted that although Plaintiff had threatened suicide, she had not gone to the emergency room though encouraged to do so and admitting that she had transportation to get there (*id.*). The ALJ further based her decision on Psychologist DeFrancisco's noting that Kendall lacked motivation and finding that she could improve her situation, but that she would have to make the

---

[16]"An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."

9

effort (*id.*). The ALJ specifically found that Kendall's testimony was not credible (Tr. 19), a finding not challenged by Plaintiff in this action.

The Court notes that the Social Security regulations state that "[i]n order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work." 20 C.F.R. 404.1530(a) (2010). The regulation goes on to state that "[i]f you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits." 20 C.F.R. § 404.1530(b) (2010); *see also Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988).

Though Kendall is correct in arguing that physicians have repeatedly noted that she suffered from depression, the record is devoid of Plaintiff's attempt to seek help. Even though Psychologist DeFrancisco suggested that she needed psychotherapy, in addition to medication, Kendall has failed to show that she has sought help. Her own treating physician, Dr. Vyas, encouraged Plaintiff to get mental health treatment, but she did not follow that advice (*see* Tr. 278). The Court further notes that when Plaintiff did seek mental health treatment, for the short period of time, she reported feeling better. The

Court finds substantial support for the ALJ's conclusion that Kendall's depression is not a severe impairment.

Plaintiff also claims that the ALJ's determination of her RFC is not supported by the evidence. Kendall has argued that the decision cannot stand because no examining physician completed a physical capacities evaluation. Plaintiff references C*oleman v. Barnhart*, 264 F.Supp.2d 1007, 1010 (S.D. Ala. 2003).

The Court notes at the outset that the ALJ is responsible for determining a claimant's RFC. 20 C.F.R. § 404.1546 (2010). In this action, the ALJ determined that Kendall was capable of returning to her past relevant work as a cleaner/housekeeper (Tr. 15-23). The Court notes that this determination was a fourth-step determination, unlike the fifth-step determination of *Coleman*. 264 F.Supp.2d at 1010 ("This Court has held on a number of occasions that the Commissioner's fifth-step burden cannot be met by a lack of evidence, or by the residual functional capacity assessment of a non-examining, reviewing physician, but instead must be supported by the residual functional capacity assessment of a treating or examining physician"). Therefore, *Coleman* is inapplicable here.

Furthermore, the Court notes that although Dr. West did not

11

complete a physical capacities evaluation, he found no physical reason that Plaintiff could not work (*see* Tr. 263-65). Kendall has failed to point to any medical evidence of record which demonstrates that she cannot do her past work, much less any work at all. The Court notes that it is Plaintiff's burden to prove that she cannot perform her past relevant work. *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987) (*citing Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985)). Kendall's claim that the ALJ did not properly determine her RFC lacks merit.

Plaintiff has raised two claims in this action. Both are without merit. Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED**. Judgment will be entered by separate order.

DONE this 15th day of June, 2011.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE